S06A1980. FOLSOM et al. v. ROWELL et al.
S06A1981. SMITH v. ROWELL et al.
(640 SE2d 5)

CARLEY, Justice.

Howard C. Folsom (Testator) died in 1960, and was survived by six adult children. In Paragraph 3 of his will, he bequeathed a life estate in all of his property to Alma Louise Folsom (A. Folsom), who was his mentally handicapped youngest child. He bequeathed the remainder in Paragraph 4, as follows:

I give, bequeath and devise, at the death of [A.] Folsom, all of my property both real and personal to him or her of my children, or those of my children, who shall take care of [A.] Folsom during her lifetime, taking her into his or her home, or their homes, and providing the necessities of life to her. Should none of my children provide for [A.] Folsom, then said property to go to the person who does look after [A.] Folsom, even though he or she may be an outsider.

From 1960 until 1973, A. Folsom lived in the home of her sister Lillian Rowell, now deceased, along with Ms. Rowell's children (Rowell heirs). From 1973 until 1994, A. Folsom resided with Mitchell Folsom (M. Folsom), who was the widow of one of Testator's sons. They first lived in M. Folsom's home and then in the home place which was part

of A. Folsom's life estate. From 1994, when A. Folsom suffered a stroke, until her death in 2001, she resided with Linda Smith, a granddaughter of Testator, and was cared for by Ms. Smith and M. Folsom. Certain grandsons of Testator (Folsom heirs), who are brothers, allegedly performed house maintenance and repairs for A. Folsom's benefit, but they did not live with her or provide personal care.

One of the Rowell heirs was appointed administrator de bonis non of Testator's estate with the will annexed, and thereafter filed a motion for construction of Paragraph 4. The probate court transferred the case to superior court. The Rowell heirs and Ms. Smith, individually and in her capacity as executrix of the will of M. Folsom, now deceased, entered into a settlement with several other heirs, whose claims were subsequently dismissed with prejudice. The Folsom heirs did not settle their claims, and filed their own motion for construction of the will. Ms. Smith filed a motion for partial summary judgment, which was joined in part by the administrator.

Concluding that only the Rowell heirs could take under Paragraph 4, the superior court granted partial summary judgment in favor of the administrator, granted his motion for construction, denied summary judgment as to Ms. Smith, and denied the Folsom heirs' motion for construction. After granting an extension of time to file a notice of appeal, the superior court denied Ms. Smith's and the Folsom heirs' motions for reconsideration. In its orders, the superior court held that the remainder interest was initially contingent, and became vested in Ms. Rowell when she took A. Folsom into her home, subject to partial divestment in favor of any other children of Testator who provided the requisite care; that such interest was not contingent upon the remaindermen surviving the life tenant, and could descend to their heirs at the death of A. Folsom; that the remainder interest of those other than Testator's children could no longer vest once any of the children provided care; and, that the term "children" in Paragraph 4 did not include grandchildren such as Ms. Smith. The Folsom heirs appeal in Case Number S06A1980, and Ms. Smith appeals in Case Number S06A1981.

### Case Number S06A1980

1. The Folsom heirs contend that, because the remainder interest created by the will was subject to a condition precedent, it was contingent as to the person who was to take in remainder and, thus, under *Britt v. Fincher*, 202 Ga. 661, 664 (3) (44 SE2d 372) (1947), could not vest in anyone or constitute an inheritable interest until termination of the life estate. If this were correct, then the Rowell heirs could not take under Paragraph 4, because Ms. Rowell did not survive A. Folsom.

The holding in *Britt* was based entirely on former OCGA § 44-6-63, which was repealed in 1994. Under that statute, a remainder interest would descend to the heirs of the remainderman if it was either vested or contingent as to an event, but not if it was contingent as to a person. At the same time that OCGA § 44-6-63 was repealed, the legislature also enacted a new statute which clearly made all remainder interests, whether vested or contingent, inheritable: "Future interests or estates are descendible, devisable, and alienable in the same manner as estates in possession." OCGA § 44-5-40. See also 1 Redfearn, Wills, Ga., § 13-14, p. 464 (6th ed. 2000). However,

> [t]he will is construed according to the law in effect at the time of the testator's death. [Cits.] The presumption is that the testator "intended that his property should go where the law carries it. . . ." [Cit.] The statutory change in the law [34] years after the testator's death relating to the inheritance rights of [remaindermen] . . . will not be given retrospective effect. [Cit.]

*Sardy v. Hodge*, 264 Ga. 548, 549-550 (448 SE2d 355) (1994). Therefore, former OCGA § 44-6-63 governs the interest of the Rowell heirs.

Application of that statute requires a determination of the nature of Ms. Rowell's remainder interest.

> To distinguish between vested remainders and contingent remainders, a court must determine whether at the time the instrument takes effect there is "a person who in his own right, or as a part of his estate, would take all of this property if (the life estate) ended now." [Cits.] If there is such a person, then the remainder is vested subject to partial or complete defeasance. [Cits.] If no such person is identifiable, then the remainder is subject to a condition precedent and is a contingent remainder. [Cit.]

*Swanson v. Swanson*, 270 Ga. 733, 734 (1) (514 SE2d 822) (1999). See also OCGA § 44-6-61. At the time of Testator's death, the remainder interest was contingent, as there was not any identifiable person who would take the property upon the termination of A. Folsom's life estate.

> Remainders may be created for persons not in being [cit.] or not ascertained. Such a remainder is contingent, [cits.] but where a person answering the description of the remainderman comes into being during the existence of the particular estate, the remainder is no longer contingent; it becomes

vested [cits.] immediately but subject to open and to being shared with all persons within the description who come into being up to the time the enjoyment of the estate in possession commences. [Cit.]

1 Redfearn, supra at § 13-13, p. 461. See also *Padgett v. Hatton*, 200 Ga. 209, 212 (5) (a) (36 SE2d 664) (1946). Accordingly, once Ms. Rowell fulfilled the condition precedent of providing the requisite care, she became an identifiable person who would take possession when the life estate ended, and her remainder interest became vested subject to partial divestment whenever she failed to fulfil the condition subsequent of continuing to provide care during A. Folsom's lifetime. See *Raby v. Minshew*, 238 Ga. 41, 42 (3) (231 SE2d 53 ) (1976); *Winn v. Tabernacle Infirmary*, 135 Ga. 380 (1) (69 SE 557) (1910). Furthermore, "[i]n view of the strong preference in Georgia for early vesting, the language required to render a remainder contingent upon surviving the life tenant must be clear and unambiguous. [Cits.]" *Usry v. Farr*, 274 Ga. 438, 440 (2) (553 SE2d 789) (2001). There is not any requirement or manifest intention in Paragraph 4 that a child who provides the requisite care must survive until her interest becomes possessory. See OCGA § 44-6-66; *Witcher v. Witcher*, 231 Ga. 49, 52 (200 SE2d 110) (1973); *Johnson v. Wishard*, 227 Ga. 355, 356 (1) (180 SE2d 738) (1971); 1 Redfearn, supra at § 13-14, p. 464.

Because Ms. Rowell's remainder interest became vested subject to partial divestment prior to A. Folsom's death, and nothing in Paragraph 4 made that remainder interest contingent on survival, the Rowell heirs inherited their mother's remainder interest. Former OCGA § 44-6-63 (a). Accordingly, the superior court correctly denied the Folsom heirs' motions for construction and for reconsideration.

## Case Number S06A1981

2. Ms. Smith contends that the superior court erred in ruling that temporary care by a child of Testator permanently prevented an outsider who subsequently cared for the life tenant from sharing in the remainder. Arguing that this ruling is contrary to the Testator's intention, Ms. Smith requests this Court to resolve an ambiguity which is allegedly present in Paragraph 4, by substituting and inferring certain language.

" 'It is a general rule that the intentions of the testator must be sought in construing a will, but the court has no power to devise a new scheme or to make a new will.' [Cit.]" *First Nat. Bank of Atlanta v. Robinson*, 209 Ga. 582, 586 (74 SE2d 875) (1953). The superior court may not supply words unless the proof of intention is clear and unquestionable, and the "clause as it stands is unintelligible or

inoperative." Former OCGA § 53-2-91. See current OCGA § 53-4-55. The second sentence of Paragraph 4 permits persons other than Testator's children to care for A. Folsom and thereby share in the remainder. However, the second sentence takes effect only if "none of [Testator's] children provide[s] for [A.] Folsom...." Ms. Smith asserts that if, during some period of A. Folsom's life, no child of Testator cared for her, but an outsider did, then that outsider would inherit some portion of the remainder estate. However, the condition in the second sentence of Paragraph 4 is in no way limited to periods of time when A. Folsom was not receiving the requisite care from one of her siblings. Otherwise, the condition could not ever prevent anyone from sharing in the remainder and, thus, would be meaningless. By its express terms, therefore, the second sentence does not apply if a child of Testator provided the specified care for a time, as did Ms. Rowell for 13 years. Where, as here, "the language of a will is clear and can be given legal effect as it stands, the courts will not, by construction, reform the will or give it a different effect. [Cits.]" 1 Redfearn, supra at § 7-6, p. 200. See also *Crow v. Lewis*, 223 Ga. 872, 873 (159 SE2d 77) (1968).

Although the trial court's ruling may seem inequitable towards outsiders who provide a substantial portion of the care for A. Folsom, that seeming inequity is mitigated by the fact that care givers other than Testator's children could be and were assisted through the use of A. Folsom's life estate. More importantly, "[a] testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the policy of the state." Former OCGA § 53-2-9 (a). See current OCGA § 53-4-1. Testator's disposition in this case is not illegal or unenforceable. The plain language of Paragraph 4 indicates that Testator simply had a strong preference for his children to provide the requisite care and to be the only persons to receive the ultimate distribution of his estate. That provision reveals an intention to motivate them to care for A. Folsom by rewarding, as fully as possible, those of his children who would do so, even though any other care givers would be excluded as a result.

> The plain language here involved can not be changed by speculation as to what might have been the motive prompting the [testator] in using that language. Courts are without authority to rewrite by construction an unambiguous will; for to do that would be to substitute the will of the court for that of the testator. It is no proper concern of the court whether the disposition of one's property by will is wise or unwise, is justified or unjustified, so long as such disposition is legal and the intention of the testator is certain and clearly expressed by the terms of the will. Although the court may

regard as frivolous or insufficient the reasons prompting the testator to make a bequest, yet, when the intention to make the bequest is too plain to be challenged, it is the duty of the court to give effect to it and thus allow the expressed wish of the testator to stand.

*Hungerford v. Trust Co. of Ga.*, 190 Ga. 387, 389-390 (9 SE2d 630) (1940). Ms. Smith argues that Testator intended to motivate someone to provide care for A. Folsom during periods of time when his children did not take on that responsibility. "This argument shows an attempt to have the will rewritten. If such had been the intention, it could have been so stated in lieu of the language employed, which is not susceptible of any such construction." *Hungerford v. Trust Co. of Ga.*, supra at 390. Under Ms. Smith's construction, the separate provisions of Paragraph 4 for Testator's children and for those persons who are not his children have no real purpose, since that paragraph could simply have stated that whoever provides the specified care will share in the remainder.

Accordingly, the superior court properly ruled that, once any of Testator's children provided care, only the remainder interests of other children could vest.

3. Ms. Smith urges, in the alternative, that the superior court erred by interpreting Paragraph 4 such that she is an "outsider" and not a "child."

" 'Grandchildren can not take by the description of children unless there be something in the will to manifest that intention.' [Cits.]" *Folsom v. First Nat. Bank of Atlanta*, 246 Ga. 320, 321 (271 SE2d 461) (1980). Ms. Smith argues that, in context, the term "outsider" in the second sentence of Paragraph 4 excludes family members or blood relatives and, correspondingly, the word "children" in the first sentence includes family members. By its terms, however, the second sentence does not apply only to "outsiders," but to all persons who are not Testator's children, even outsiders. Thus, that sentence plainly applies to family members other than Testator's children. There is not anything in the will which manifests an intention to include grandchildren such as Ms. Smith in the provision dealing with "children" and not in the succeeding provision applying to other family members and outsiders.

Therefore, the superior court correctly granted partial summary judgment in favor of the administrator, granted his motion for construction, and denied Ms. Smith's motions for partial summary judgment and for reconsideration.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2007.

*Jeffrey W. Duncan,* for Robert Lee Folsom et al.
*Jack F. Witcher, Daniel B. Greenfield,* for Linda A. Smith.
*Thomas M. Rego,* for Donald E. Rowell et al.